# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **MICHAEL WILLIAMS, as administrator of the Estate of CHARLES EDWARD WILLIAMS, deceased,** | ) <br> ) <br> ) Case No. _____ <br> ) |
| *Plaintiff,* | ) **JURY DEMANDED** <br> ) |
| v. | ) <br> ) |
| **WHITE COUNTY, TENNESSEE; CLIFFF M. ALTOBELLI; individually and in his official capacity; NATE THEISS; individually and in his official capacity; STEVE PAGE; individually and in his official capacity,** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| *Defendants.* | ) |

## COMPLAINT

**COMES NOW,** Plaintiff, Michael Williams as administrator of the Estate of Charles Edward Williams, by and through counsel, for cause of action against the defendants, both jointly and severally, and would respectfully state unto this Honorable Court as follows:

### INTRODUCTION

1. This civil rights and wrongful death case challenges a forced entry into a home which lead to the fatal shooting of Charles Edward Williams. Mr. Williams was unarmed and holding a wallet when he was shot by White County Sheriff's Deputy Cliff Altobelli.

2. This cause of actions is brought by Michael Williams as administrator of the Estate of Charles Williams against the defendants pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments of the Constitution of the United States.

3. Plaintiff brings this action to recover all damages allowable under the law.

## JURISDICTION AND VENUE

4. Jurisdiction is founded upon 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiffs' claims of violation of civil rights under 42 U.S.C. § 1983.

5. Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391 in that the factual acts and omissions, which give rise to this cause of action occurred within this district and within one year of the filing of this Complaint and this Honorable Court otherwise has jurisdiction.

6. The Federal Court, pursuant to 28 U.S.C. § 1367(a), should assume supplemental jurisdiction over state law claims.

## PARTIES

7. Plaintiff, Michael Williams, is an adult citizen and resident of White County, Tennessee. Michael Williams is one of three sons of Charles Edward Williams and brings this action as Administrator of the Estate of Charles Edward Williams, deceased.

8. At all times relevant, the decedent, Charles Edward Williams, was 47 year old white male citizen and resident of White County, Tennessee.

9. Defendant White County, Tennessee ("White County") is a governmental entity organized under the laws of the State of Tennessee and is known as a county, which acts through its elected officials. Among its many functions, White County operates and maintains a law enforcement agency known as the White County Sheriff's Office ("WCSO"). White County has a duty to run its policing activities in a lawful manner so as to preserve the peace of White County and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the constitutions and laws of the United States of America and the State of Tennessee.

10. Defendant Cliff Altobelli, upon information and belief, is an adult male resident and citizen of the State of Tennessee. At all times material hereto, Defendant Altobelli was a deputy sheriff

of the WCSO and was acting by virtue of his position as a law enforcement officer and under the color of state law. Defendant Altobelli is also sued in his individual capacity.

11. Defendant Nate Theiss, upon information and belief, is an adult male resident and citizen of the State of Tennessee. At all times material hereto, Defendant Theiss was a sergeant in the White County Sheriff's Office and was acting by virtue of his position as a law enforcement officer and under the color of state law. Defendant Theiss is also sued in his individual capacity.

12. Defendant Steve Page, upon information and belief, is an adult male resident and citizen of White County, Tennessee. At all times material hereto, Defendant Page was the elected sheriff of White County, Tennessee and the chief policy maker of the White County Sheriff's Office. All at time material hereto, Defendant Page was acting by virtue as a law enforcement officer under color of state law and chief policy maker of the White County Sheriff's Office. Defendant Page is also sued in his individual capacity.

## FACTS[1]

13. Employees of the White County Sheriff's Office ("WCSO") knew the decedent, Charles Edward Williams ("Mr. Williams"), as one of their regulars.

14. Deputies, including Defendant Nate Theiss, had many non-violent interactions with Mr. Williams over the years.

15. In January of 2021, Charles Williams was staying with his girlfriend at 1250 Woodland Trail, Sparta, Tennessee.

16. Other than Mr. Williams and his girlfriend, at least four other individuals were staying at the property.

---

[1] The facts and allegations stated herein are based on the review of the records regarding the death of Charles Williams that have been made available to the Plaintiff at this time.

17. On January 7, 2021 White County Deputy Austin Edwards attempted to pull over a vehicle driven by Mr. Williams.

18. Mr. Williams drove to 1250 Woodland Trail and fled on foot.

19. Several White County Sheriff's deputies came to the scene, including Defendant Nate Thiess. However, officers were not able to locate Mr. Williams.

20. While Defendant Thiess was on the scene, he spoke with two individuals, a male and a female, who stated that they were currently staying at 1250 Woodland Trail.

21. Deputy Edwards secured an arrest warrant for Mr. Williams.

22. At around 1:10 p.m. the next day, January 8, 2021, Defendants Cliff Altobelli and Nate Thiess went to 1250 Woodland Trail, Sparta, Tennessee to serve the arrest warrant on Charles Williams.

23. When Defendants Altobelli and Thiess arrived at 1250 Woodland Trail, neither Altobelli nor Thiess announced that they were law enforcement with the sheriff's office until after they had been at the property over ten minutes.

24. At the time the defendants did announce, they only stated they were with the sheriff's office and did not state who they were there for or why they were there.

25. Defendants did not state they were there to serve an arrest warrant on Charles Williams.

26. Defendant Thiess observed two sets of boot prints in the snow, one set smaller than the other, that he followed from the back of the property to a space underneath the house trailer. No one was located underneath the trailer.

27. The boot prints could have likely resulted from the two individuals, a male and a female, whom Defendant Thiess spoke with at the property the day before.

28. Defendant Thiess heard sounds inside the house that sounded like people moving around.

29. Defendant Altobelli heard a dog moving around inside the house.

30. Defendant Theiss knew that at least two other people besides Mr. Williams were staying at 1250 Woodland Trail. Further, Defendant Theiss knew from prior interactions with Mr. Williams that Mr. Williams' girlfriend lived at 1250 Woodland Trail.

31. No voices were heard by Theiss or Altobelli from inside the house.

32. When no one answered the door, Defendant Theiss went to a neighbor's house where the neighbor stated he had not seen or heard Charles Williams or anyone else at 1250 Woodland Trail that day.

33. White County Sheriff Steve Page and Captain John Meadows came to the scene to discuss with Theiss and Altobelli what was going on and whether or not they could make forced entry.

34. Captain Meadows informed the others that Charles Williams was not the owner of the property.

35. At this time on January 8, 2021, no one from the White County Sheriff's Office had seen Charles Williams at 1250 Woodland Trail on that day.

36. Defendant Theiss, Defendant Page, and Captain Meadows talked about whether or not they had enough to make a forced entry. None of them were certain.

37. Defendant Theiss contacted Assistant District Attorney Russell Tribble to help them determine whether or not they had enough probable cause to make a forced entry.

38. Defendant Theiss informed ADA Tribble of the two sets of boot prints in the snow and the noises from inside.

39. ADA Tribble told Theiss they were good to make forced entry.

40. Assistant District Attorney Russell Tribble was not acting as an advocate for the State when he gave legal advice to law enforcement regarding forced entry into the residence at 1250 Woodland Trail.

41. Just after 2:00 p.m. Captain Meadows went around to the back of the house while Defendants Page, Theiss, and Altobelli went to the front door.

42. Defendant Theiss knocked and stated this was the final warning.

43. Defendant Page again discussed with Theiss whether they had enough to force entry. Theiss responded that they did.

44. Defendant Page told Defendants Theiss and Altobelli to go in.

45. Defendant Theiss kicked the locked front door in and entered the front of the house with Defendant Altobelli.

46. As the defendants entered the front door, Mr. Williams exited out the back door and crossed the snow-covered deck.

47. Mr. Williams saw Captain Meadows standing at the bottom of the stairs and turned around to go back into the house.

48. Mr. Williams, who was no stranger to law enforcement and being arrested, commonly pulled out his wallet to give to his girlfriend or whoever else was nearby when he being arrested.

49. In keeping with this habit, Mr. Williams pulled his wallet out of his back pocket.

50. When Mr. Williams turned to go back into the house, with his wallet in hand, Defendant Altobelli came out the back door and fired one shot.

51. Altobelli did not give any commands or warnings prior to firing the shot.

52. The bullet struck Mr. Williams in the upper right abdomen, with no exit wound.

53. Mr. Williams lay bleeding in the snow, writhing and crying out in pain for over twenty minutes until emergency medical services arrived on the scene.

54. Mr. Williams was transported from the scene to St. Thomas Highlands Hospital in Sparta, Tennessee where he was pronounced dead at 3:34 p.m., a little over an hour after Defendant Altobelli shot Charles Edward Williams.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Civil Rights Pursuant to 42 U.S.C. § 1983
### Fourth Amendment –Unreasonable Forced Entry

55. The Plaintiff hereby realleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

56. Defendants Altobelli, Theiss, and Page, acting under color of state law and within the course and scope of their employment as law enforcement officers with White County, unlawfully forced entry into 1250 Woodland Trail without probable cause or reasonable suspicion to believe that Charles Edward Williams was present at the time the forced entry was made, in violation of Charles Williams' clearly established rights guaranteed by the Fourth Amendment.

57. A reasonable prudent law enforcement officer would or should have known that forcing entry under the circumstances described here in violated Charles Williams' clearly established Fourth Amendment rights to be free from unreasonable and unlawful entries, searches, and seizures.

58. Defendants' forced entry was unnecessary, outrageous, intentional, reckless, deliberate, malicious, and unreasonable, warranting the imposition of punitive damages commensurate with the wrongful acts alleged herein.

59. As a direct and proximate result of the unlawful conduct of the defendants in violating Charles Williams' constitutional rights, Plaintiff suffered damages and is entitled to relief.

## COUNT II
### Violations of Civil Rights Pursuant to 42 U.S.C. § 1983
### Fourth Amendment - Excessive Force

60. The Plaintiff hereby realleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

61. The actions and inactions of the Defendant Cliff Altobelli, which resulted in the fatal injuries to Charles Williams, were done under color of state law, within the course and scope of Altobelli's employment as a law enforcement officer with White County, and in a manner which caused Charles Williams to suffer constitutional violations. Specifically, Defendant Altobelli operated to violate Charles Williams's right to not be subjected to unreasonable, unjustified, and deadly excessive force as secured by the Fourth Amendment to the Constitution of the United States of America, incorporated to the states by the Fourteenth Amendment to the Constitution of the United States, and Charles Williams's right to be accorded equal protection under the laws as guaranteed to Charles Williams under the Fourteenth Amendment to the Constitution of the United States.

62. Defendant Cliff Altobelli operated to violate Charles Williams' civil rights as protected by the Civil Rights Act of 1871, 42 U.S.C. § 1983.

63. Defendant Cliff Altobelli used excessive deadly force when he shot an unarmed Charles Williams.

64. Defendant Altobelli was close enough to Mr. Williams that Altobelli should have recognized that Williams was holding a wallet, not a gun.

65. At the time of the events described herein, Charles Williams had a clearly established constitutional right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the objectively unreasonable use of deadly excessive force.

66. Defendant Altobelli was aware at the time of this incident that Charles Williams had a clearly established constitutional right to be free from the objectively unreasonable use of deadly excessive force as described above.

67. Defendant Altobelli's use of unnecessary, unreasonable, outrageous, and deadly excessive force, as described herein, was intentional, reckless, deliberate, wanton sadistic, malicious, and unnecessary warranting the imposition of punitive damages commensurate with the wrongful acts alleged herein.

68. As a direct and proximate result of the unlawful conduct of the defendant in violating Charles Williams' constitutional rights, Plaintiff suffered damages and is entitled to relief under.

## COUNT III
## MUNICIPAL AND SUPERVISORY LIABILITY

69. The Plaintiff hereby realleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

70. White County and Sheriff Steve Page are under a constitutional duty to properly train, supervise, and discipline members of the WCSO to ensure that the policing activities of the WCSO are run in a lawful manner, preserving to the citizens of White County the rights, privileges, and immunities guaranteed to them by the Constitutions and laws of the United States of America and the State of Tennessee

71. White County and Defendant Page failed in this constitutional duty by permitting, encouraging, tolerating, and knowingly acquiescing to an official pattern, practice or custom of its

law enforcement officers, including the individual defendant officers, violating the constitutional rights of the public at large, including the decedent, Charles Edward Williams.

72. The actions of the individual defendants complained of herein were unjustified, unreasonable, unconstitutional, excessive, and grossly disproportionate to the actions of Charles Williams, and constituted an unreasonable seizure effectuated through the unreasonable forced entry, use of excessive and unreasonable force, and a deprivation of Charles Williams's due process protections in violation of the rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution.

73. White County and Defendant Page are directly liable for the violation of Charles Williams's constitutional rights due to the following policies, practices or customs, which were in effect at the time of this incident and which were the moving force behind the violation of Charles Williams's constitutional rights:

   a. Defendants failed to properly supervise and discipline its officers with respect to violations of the laws of the State of Tennessee, the Constitution of the United States, and its own policies regarding the forced entry and use of force, which creates a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated, condoned and accepted in deliberate indifference and reckless disregard to the public at large, including Charles Williams.

   b. Defendants failed to adequately monitor and evaluate the performance of its officers and their compliance with the laws and policies, practices and customs with respect to the use of force and forced entry into a residence, which creates a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated, condoned and accepted in deliberate indifference and reckless disregard to the public at large, including Charles Williams;

   c. Defendants failed to adequately respond to and investigate complaints regarding officer misconduct by the citizenry, including, but not limited to, complaints regarding the use of force and unlawful forced entry, in an effort to escape liability, thus creating a policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is ratified, condoned or approved, in deliberate

  indifference and reckless disregard to the rights of the public at large, including Charles Williams;

 d. Defendants have a policy, practice or custom of exonerating officers regarding complaints of misconduct, including, but not limited to, the use of force, and unlawful forced entry, in order to escape liability and creating an atmosphere where illegal and unconstitutional behavior is condoned, tolerated, or approved, in deliberate indifference and reckless disregard to the rights of the public at large, including Charles Williams;

 e. Defendants have a policy, practice or custom of allowing its officers to use excessive and/or unreasonable force without fear of discipline creating an atmosphere where such behavior is accepted, approved and ratified, in reckless disregard and deliberate indifference to the welfare of the public at large, including Charles Williams;

74. Defendant Altobelli did not follow the WCSO Use of Force Policy.

75. White County has a habit and practice of behaviors that violate the Fourth Amendment rights of its citizens. Multiple lawsuits have been filed against White County for claims of Fourth Amendment violations.

76. Alternatively, White County and Defendant Page are liable for the actions of the individual defendants by virtue of the fact that they were informed of improper conduct of the individual defendants and failed to discipline them, which evidences that the conduct of the individual defendants at the time of the events described herein was in conformity with the existing policies, practices and customs of White County. Accordingly, these Defendants ratified, condoned, and approved the individual defendant officers' conduct in this matter in all respects.

77. Alternatively, White County and Defendant Page are liable for the constitutional violations committed by the individual defendants under the doctrines of agency, vicarious liability, employer-employee relations, master-servant, respondeat superior, joint venture, contract and as a result of their non-delegable duty to provide officers who comply with the constitution and laws of the United States and the State of Tennessee.

78. As a direct and proximate result of the foregoing policies, practices and customs of White County and Defendant Page, the violation of the constitutional rights of citizens by the members of the WCSO and the individual defendant officers was substantially certain to occur and was the moving force behind the violation of Charles Williams's constitutional rights. As a result, Mr. Williams suffered injuries and damages.

## COUNT VI
## STATE LAW CLAIMS
### Wrongful Death

79. Plaintiff re-alleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference make said paragraphs a part hereof as if fully set forth herein.

80. At all times hereto, the individual defendants were acting in the course and scope of their employment with White County, Tennessee and the White County Sheriff's Office.

81. The acts, omissions and conduct of the individual defendants alleged herein constitutes assault, battery, and negligence under the laws of the State of Tennessee.

82. The individual Defendants and White County should be held jointly and severally liable for all said torts, as the individual defendants were acting in the course and scope of their employment at all times material hereto and their actions were foreseeable.

83. In the alternative, Plaintiff submits that White County is liable for all torts committed by its officers, that White County has waived immunity under state law, and that the individual defendants are liable for all torts committed by them for which White County has not waived immunity.

84. The individual defendants are liable for all torts committed by them and for which White County has not waived immunity under the Tennessee Governmental Tort Liability Act, Tenn.

Code Ann. §20-20-101, et seq. ("TGTLA") and which include, but are not limited to, assault and battery.

85. White County is liable for their own negligence and are responsible for the aforesaid torts committed by the individual defendants for which they have waived immunity under the TGTLA and which include negligence.

86. Plaintiff brings this cause of action under state law against White County for negligence pursuant to the TGTLA, Tenn. Code Ann. §20-20-101, et seq. White County has waived its immunity for its own negligence and the acts and omissions of its employees complained of herein pursuant to the TGTLA. At all times material hereto, White County's employees, including the individual defendants, were acting in the course and scope of their employment.

87. White County was under a duty to conduct their law enforcement activities in such a manner as to preserve to the citizens of White County, Tennessee, the rights, privileges and immunities guaranteed to them by the laws of the State of Tennessee, the Constitution of the State of Tennessee and the Constitution of the United States.

88. While the Plaintiffs have asserted that the policies, practices, customs and usages of White County were deliberately indifferent to Plaintiffs' constitutional rights, the Plaintiffs plead in the alternative that White County negligently screened, hired, trained, monitored, supervised, controlled, assigned, counseled, investigated and disciplined the Individual Defendants and other officers and employees of their respective departments, which made the misconduct of the individual defendants and other officers a foreseeable result of the White County systemic deficiencies.

89. The aforementioned deficiencies of White County resulted in their failure to act in a reasonable and prudent manner and constitute negligence under the laws of the State of

Tennessee that was a proximate cause of the torts committed by the Individual Defendants.

90. As a direct and proximate result of the aforementioned acts and omissions of the Defendants, the Mr. Williams has been injured and damaged.

## COUNT VIII
## T.C.A. § 8-8-302 et. seq.

91. The Plaintiff hereby realleges and incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

92. In addition to the theories of liability against White County previously set forth herein, Plaintiff avers that White County is directly liable for all wrongs, injuries, damages, and expenses incurred and sustained pursuant to T.C.A. § 8-8-302 et. seq. as at all times material hereto the individual defendants were acting by virtue of and under color of their offices as deputies employed by White County and the White County Sheriff's Office.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays as follows:

1. That proper process issue to Defendants and that they be required to answer under oath in the time required by law;

2. That judgment be rendered in favor of Plaintiff and against the Defendants, both jointly and severally, on all causes of action asserted herein;

3. That Plaintiff be awarded those damages to which he may appear that he is entitled by proof submitted in this case for the wrongful death of Charles Williams, including but not limited

to pain and suffering prior to death, and the violation of the rights guaranteed to Mr. Williams by the Fourth and Fourteenth Amendments to the Constitution of the United States;

4. That punitive damages be awarded against the applicable defendants as allowed by the law in an amount to be determined by a jury as reasonable;

5. That Plaintiff be awarded reasonable expenses, including attorney fees as authorized by 42 U.S.C. § 1988 and state law;

6. That Plaintiff receives any such other, further, and general relief as this Honorable Court deems just and proper.

7. That a jury of six (6) be impaneled to try any and all issues in this case.

**CONSTITUTIONALLY SUBMITTED,** this the 5th day of January 2022,

*Michael Williams*
**MICHAEL WILLIAMS** as Administrator
of the estate of Charles Edward Williams,
*Plaintiff*


s/ Richard M. Brooks
**By:** **RICHARD M. BROOKS, #4308**
*ATTORNEY FOR PLAINTIFF*
130 Third Avenue West
Carthage, TN 37030
Phone: (615) 735-0807
Fax: (615) 735-1921
Email: utkrmb@comcast.net